FILED
2013 SEP 19 PM 3:07
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>VLADISLAV TCHERNIAVSKY,<br>　aka "Vladislav Tcherniyvsky,"<br>　aka "Vladislav Cherniavsky,"<br>　aka "Vladi," and<br>AMALYA CHERNIAVSKY,<br>　aka "Amalya Surenovna Yegiyan,"<br><br>　　　　　Defendants. | CR No. **CR13-0668**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349:<br>Conspiracy to Commit Health<br>Care Fraud; 18 U.S.C.<br>§ 1347: Health Care Fraud;<br>18 U.S.C. § 2(b): Causing<br>an Act to be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Conspirators

1. Defendant VLADISLAV TCHERNIAVSKY, also known as ("aka") "Vladislav Tcherniyvsky," aka "Vladislav Cherniavsky," aka "Vladi" ("defendant V. TCHERNIYVSKY"), co-operated JC Medical Supply ("JC Medical"), a durable medical equipment ("DME") supply

company located at 1066 Atlantic Avenue, Suite M, Long Beach, California, within the Central District of California.

2. Defendant AMALYA CHERNIAVSKY ("defendant A. CHERNIAVSKY"), aka "Amalya Surenovna Yegiyan," owned and co-operated JC Medical.

3. A co-conspirator known to the Grand Jury ("CC-1") co-owned and co-operated a medical clinic with defendant V. TCHERNIAVSKY located at 2491 Pacific Avenue, Suite #2, Long Beach, California ("Suite #2 Clinic"), within the Central District of California.

4. A co-conspirator known to the Grand Jury ("CC-2") was employed as a physician at the Suite #2 Clinic.

The Medicare Program

5. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

6. CMS contracted with private insurance companies to (a) certify DME providers for participation in the Medicare program and monitor their compliance with Medicare standards; (b) process and pay claims; and (c) perform program safeguard functions, such as identifying and reviewing suspect claims.

7. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

8. DME companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

9. To obtain payment from Medicare, a DME company first had to apply for and obtain a provider number. By signing the provider application, the DME company agreed to abide by Medicare rules and regulations, including the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)), which, among other things, prohibits the payment of kickbacks or bribes for the referral of Medicare beneficiaries for any item or service for which payment may be made by the Medicare program.

10. If Medicare approved a provider's application, Medicare would assign the provider a Medicare provider number, enabling the provider (such as a DME company) to submit claims to Medicare for services and supplies provided to Medicare beneficiaries.

11. To obtain and maintain their Medicare provider number billing privileges, DME suppliers had to meet Medicare standards for participation. The Medicare contractor responsible for evaluating and certifying DME providers' compliance with these standards was Palmetto GBA ("Palmetto").

12. Until about September 2006, CIGNA processed and paid Medicare DME claims in Southern California. From in or about October 2006 onward, Noridian Administrative Services ("Noridian") performed this function.

13. Most DME providers, including JC Medical, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

14. Medicare paid DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be paid by Medicare.

15. To bill Medicare for DME it provided to a beneficiary, a DME provider was required to submit a claim (Form 1500) to Noridian. Medicare required claims to be truthful, complete, and not misleading. In addition, when a claim was submitted, the provider was required to certify that the services or supplies covered by the claim were medically necessary.

16. Medicare required a claim for payment to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date the DME was provided, and the name and unique physician identification number ("UPIN") of the physician who prescribed or ordered the DME.

17. Medicare had a co-payment requirement for DME. Medicare reimbursed providers 80% of the allowed amount of a DME claim and the beneficiary was ordinarily obligated to pay the remaining 20%.

B. THE OBJECT OF THE CONSPIRACY

18. Beginning in or around March 2006, and continuing through on or about June 6, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants V. TCHERNIAVSKY, A. CHERNIAVSKY, CC-1, and CC-2, together with others known and unknown to the Grand Jury, knowingly combined,

conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C. THE MANNER AND MEANS OF THE CONSPIRACY

19. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. On or about March 6, 2003, defendant A. CHERNIAVSKY executed and filed a Fictitious Business Name Statement with the Los Angeles County Recorder's Office declaring that she was conducting business under the fictitious name of JC Medical.

    b. On or about August 6, 2003, defendants V. TCHERNIAVSKY and A. CHERNIAVSKY opened a corporate bank account for JC Medical at Bank of the West, account number xxxxx1720. Defendants V. TCHERNIAVSKY and A. CHERNIAVSKY were the only signatories on this account.

    c. On or about March 1, 2006, defendant A. CHERNIAVSKY executed and submitted an application to Medicare to obtain and maintain a Medicare provider number for JC Medical.

    d. On or about December 13, 2007, defendant A. CHERNIAVSKY executed and submitted an electronic funds transfer agreement to Medicare, requesting that all future reimbursements from Medicare be directly deposited into the JC Medical Bank of the West Account.

    e. Defendants V. TCHERNIAVSKY and A. CHERNIAVSKY paid, and caused to be paid, kickbacks to CC-1 in return for DME prescriptions that V. TCHERNIAVSKY and A. CHERNIAVSKY used to submit claims to Medicare on behalf of JC Medical.

     f.   Defendant V. TCHERNIAVSKY, CC-1, CC-2, and others generated, and caused to be generated, false and fraudulent prescriptions and documents, including medically unnecessary PWC prescriptions, at the Suite #2 Clinic and other sources.

     g.   Defendants V. TCHERNIAVSKY and A. CHERNIAVSKY obtained these false and fraudulent prescriptions and documents for the purpose of using these prescriptions and documents to submit, and cause the submission of, false and fraudulent claims to Medicare on behalf of JC Medical, including false and fraudulent claims for R.V., E.L., S.P., P.S., M.E., and J.M.C.

     h.   After acquiring the false and fraudulent prescriptions and documents, defendants V. TCHERNIAVSKY and A. CHERNIAVSKY submitted, and caused the submission of, false and fraudulent claims to Medicare for PWCs and related accessories that were never provided by JC Medical to Medicare beneficiaries.

     i.   After acquiring the false and fraudulent prescriptions and documents, defendants V. TCHERNIAVSKY and A. CHERNIAVSKY submitted, and caused the submission of, false and fraudulent claims to Medicare for PWCs and related accessories that the beneficiaries did not need.

     j.   As a result of the submission of false and fraudulent claims, Medicare made payments to JC Medical, including payments into JC Medical's corporate bank account at Bank of the West.

     k.   Defendants V. TCHERNIAVSKY and A. CHERNIAVSKY then disbursed, and caused the disbursement of, monies from JC Medical's corporate bank account to themselves and others. Defendants V. TCHERNIAVSKY and A. CHERNIAVSKY also disbursed, and

caused the disbursement of, cash payments to themselves and others from Medicare proceeds.

20.     Between in or around July 2006, and on or about June 6, 2013, JC Medical submitted to Medicare false and fraudulent claims totaling approximately $1,507,390 for PWCs and related accessories, and Medicare paid JC Medical approximately $770,332 on those claims.

///
///
///

COUNTS TWO THROUGH SIX

[18 U.S.C. §§ 1347, 2(b)]

A.   INTRODUCTORY ALLEGATIONS

21.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 17 above of this Indictment as though set forth in their entirety herein.

B.   THE SCHEME TO DEFRAUD

22.   Beginning in or around March 2006, and continuing through on or about June 6, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants V. TCHERNIAVSKY, A. CHERNIAVSKY, CC-1, and CC-2, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.   MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

23.   The fraudulent scheme operated, in substance, as described in paragraph 19 above of this Indictment, which is hereby incorporated by reference as though set forth in its entirety herein.

///

///

D.  EXECUTIONS OF THE FRAUDULENT SCHEME

24. On or about the dates set forth below, within the Central District of California and elsewhere, defendants V. TCHERNIAVSKY and A. CHERNIAVSKY, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully caused to be submitted to Medicare for payment the following false and fraudulent claims purportedly for PWCs and related accessories:

///
///
///

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|
| TWO | E.L. | 10292849719000 | 10/19/10 | $4,585.14 |
| THREE | S.P. | 10330816774000 | 11/26/10 | $4,876.69 |
| FOUR | P.S. | 11070831194000 | 03/11/11 | $1,335.76 |
| FIVE | M.E. | 11070831192000 | 03/11/11 | $1,507.81 |
| SIX | J.M.C | 11070831196000 | 03/11/11 | $1,507.81 |

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO WOODHOUSE
Assistant United States Attorney
Deputy Chief, Major Frauds Section

BENJAMIN SINGER
Deputy Chief, Fraud Section
United States Department of Justice

BLANCA QUINTERO
Trial Attorney, Fraud Section
United States Department of Justice